*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

SCOTT REDMOND,

        Plaintiff-Appellant,

v

SPRING LOADED I, LLC, and SPRING LOADED
III, LLC,

        Defendants,

and

SPRING LOADED II, LLC, doing business as
AIRTIME TRAMPOLINE-STERLING HEIGHTS,

        Defendant-Appellee.

UNPUBLISHED
May 6, 2021

No. 349683
Macomb Circuit Court
LC No. 2016-004272-NO

Before: GLEICHER, P.J., and K. F. KELLY and RIORDAN, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*)

Plaintiff Scott Redmond sustained a devastating ankle injury when he landed improperly on a trampoline. Redmond brought a negligence claim against defendant Spring Loaded II, LLC, the owner and operator of the trampoline park where the accident occurred. The Trampoline Safety Act, MCL 691.1731 *et seq*., governs Redmond's claim. The act imposes certain safety standards on trampoline manufacturers and operators, but also limits liability through an assumption of the risk provision, as follows:

> An individual who participates in trampolining accepts the danger that inheres in that activity insofar as the dangers are obvious and necessary. Those dangers include, but are not limited to, injuries that result from collisions with other trampoliners or other spectators, injuries that result from falls, injuries that result from landing on the trampoline, pad, or platform, and injuries that involve objects or artificial structures properly within the intended travel of the trampoline are that

-1-

are not otherwise attributable to the operator's breach of his or her common law duties. [MCL 691.1736.][1]

Despite this provision, if an injured plaintiff establishes a violation of one of the specific duties of care imposed under the act, the plaintiff may recover damages to the extent that the defendant's violations caused the injury. MCL 691.1737; see also *Rusnak v Walker*, 273 Mich App 299, 304; 729 NW2d 542 (2006) (construing virtually identical language in the in the Ski Area Safety Act, MCL 408.321 *et seq.*).

The majority holds that defendant did not violate any of the specific safety standards set forth in the act, and I agree. Unfortunately for trampoline users, few of the safety standards referenced in the act apply to trampoline court operators. But despite that plaintiff's claim for damages arising from defendant's alleged safety standard violations must fail for the reasons discussed by the majority, I would hold that plaintiff's common-law failure to warn claim survives.

Plaintiff alleges that his injury occurred when he landed on the foam padding between two trampolines as he attempted to jump from one trampoline to the other, and that defendant failed to warn of the danger of jumping from trampoline to trampoline. The majority rejects that plaintiff landed on the foam padding. According to the majority's interpretation of a surveillance video, "[a]lthough he was in close proximity to the padding, it does not appear that he touched the padding when he landed."

I disagree with the majority's interpretation of the video, and I further object to the majority's usurpation of the fact-finding role reserved to the jury. I have watched the video at least a dozen times, and it appears to me that a portion of Redmond's foot did, in fact, come in contact with the foam padding. It is a close question: a paradigmatic issue of fact. The video was created from a single camera pointed in a single direction. It captures only one angle of view. It is impossible to discern from the video exactly where Redmond's foot landed as he completed his final jump. Redmond testified that he landed on the foam padding, and the video does not blatantly contradict his testimony. For that reason, the majority errs by finding otherwise. See *Scott v Harris*, 550 US 372, 378-381; 127 S Ct 1769; 167 L Ed 2d 686 (2007). Viewing the evidence in the light most favorable to Redmond, a question of fact exists regarding where his foot made contact. For summary disposition purposes, we must assume that Redmond landed on the pad between trampolines, as he testified, rather than on the trampoline itself.

Plaintiff's expert witness, Dr. Marc Rabinoff, authored a lengthy report detailing the dangers of jumping from one trampoline to another. He explained that "[t]rampolines are not designed to have persons jump on the edge of the trampoline bed near the frame," and generally "are not designed for lateral movement, including the lateral movement required to jump from one bed, over the frame, and on to another bed." Dr. Rabinoff opined that "there is a substantial

---

[1] In *Felgner v Anderson*, 375 Mich 23, 39-40; 133 NW2d 136 (1965), the Michigan Supreme Court eliminated the assumption of the risk defense in tort cases. The Trampoline Safety Act resurrects the doctrine in trampoline-associated negligence claims.

increase in the risk of injury to persons who jump on the edge of the trampoline bed near the frame or who are jumping laterally from one trampoline bed to another." He stressed:

> Notably, there is nothing inherent about a trampoline park that requires a user to jump near the edge of a trampoline bed. Nor is there anything inherent about a trampoline park that requires a user to jump from one trampoline bed over the frame and padding and on to another trampoline bed.

Dr. Rabinoff concluded that "the proximity of the trampoline beds, coupled with the absence of any signage prohibiting the practice, supports the conclusion that jumping from one bed to another was promoted by the owner/operator at the time of Mr. Redmond's injury," and that Spring Loaded failed to warn "that jumping near the edge of the trampoline bed, or using the trampoline for lateral propulsion, or jumping over the frame from one trampoline bed to another, materially increased the risks to users beyond the risk that is normally associated with jumping on a single trampoline bed."

Based on Dr. Rabinoff's testimony, I would hold that Redmond has established a jury question regarding whether jumping from one trampoline to another is an inherent risk of the activity. If it is not, Redmond did not accept a risk of injury by attempting this maneuver, and should be entitled to present his negligence claim to a jury.

My analysis considers the language of MCL 691.1736, which states that "obvious and necessary dangers" that "inhere[]" in the sport of trampolining include "injuries that result from collisions with other trampoliners or other spectators, injuries that result from falls, injuries that result from landing on the trampoline, pad, or platform, and injuries that involve objects or artificial structures properly within the intended travel of the trampoline that are not otherwise attributable to the operator's breach of his or her common law duties." I am aware that this Court has applied the last antecedent canon in interpreting a similarly worded statute in the Roller Skating Safety Act, MCL 445.1721 *et seq.*, holding that the Legislature meant to eliminate a cause of action for a breach of a common-law duty only when an "object or artificial structure" is in the path of travel. *Dale v Beta-C, Inc*, 227 Mich App 57, 69; 574 NW2d 697 (1997) ("[W]e hold that the only enumerated risk that is limited by an operator's breach of a common-law duty is for injuries 'which involve objects or artificial structures properly within the intended travel of the roller skater.' ").

In my view, *Dale* improperly applied the last antecedent canon, and this Court should not make the same mistake in the context of the statute now at issue. Our Supreme Court has cautioned that "the last antecedent rule should not be applied if 'something in the statute requires a different interpretation' than the one that would result from applying the rule." *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 192; 934 NW2d 674 (2019), quoting *Hardaway v Wayne Co*, 494 Mich 423, 428; 835 NW2d 336 (2013). "[T]he last antecedent rule does not mandate a construction based on the shortest antecedent that is grammatically feasible; when applying the last antecedent rule, a court should first consider what are the logical metes and bounds of the 'last' antecedent." *Hardaway*, 494 Mich at 429.

A natural construction of the language of MCL 691.1736 suggests that the clause "that are not otherwise attributable to the operator's breach of his or her common law duties" qualifies the term "injuries" and should be applied to all forms of trampolining "injuries," rather than being

artificially limited to the statute's final clause.[2]  Indisputably, common-law duties of care attend to all facets of trampolining, including the conduct of "other trampoliners or other spectators," maintenance and inspection of the "trampoline, pad, or platform," and the substance of the warnings owed to trampoliners at a commercially operated trampoline park.  It makes no sense, logically or linguistically, that the Legislature would carve out a single aspect of trampolining for common-law application, leaving the others unaffected.

In *Dale*, 227 Mich App at 69, this Court's analysis centered on the absence of a comma at the end of the last "injuries" clause: "Proper syntax provides that commas usually set off words, phrases, and other sentence elements that are parenthetical or independent."  The absent comma, the Court ruled, meant that the phrase "not otherwise attributable to the operator's breach of his or her common law duties" applies only to the last clause.  *Id*. at 68-69.  I cannot agree that punctuation is decisive, particularly when the sense of the paragraph leads to a different conclusion than would be dictated by a rigid application of the last antecedent rule.  "When the sense of the entire act requires that a qualifying word or phrase apply to several preceding or succeeding sections, the word or phrase will not be restricted to its immediate antecedent."  2A Sutherland, Statutes and Statutory Constructions (7th ed), § 47.33.

The context of MCL 691.1736 supports that all four described forms of trampolining injuries (resulting from "collisions with other trampoliners or other spectators," "falls," "landing on the trampoline, pad, or platform," and those that involve "objects or artificial structures properly within the intended travel of the trampoliner") are inherent risks of the activity unless they are "otherwise attributable to the operator's breach of his or her common law duties."  That "duties" is plural reinforces my view that the term applies to more than just the final form of injury.  See, e.g., *Duffy v Dep't of Natural Resources*, 490 Mich 198, 221; 805 NW2d 399 (2011).  I would reverse the trial court's grant of summary disposition and would remand for trial regarding whether Redmond accepted an inherent risk when he attempted to jump from one trampoline to the next, and whether a common-law duty required defendant to warn him of the risks of that activity.

/s/ Elizabeth L. Gleicher

---

[2] By way of reminder, here is the language.  I have highlighted the words leading to the mosty natural reading:

> An individual who participates in trampolining accepts the danger that inheres in that activity insofar as the dangers are obvious and necessary.  *Those dangers include, but are not limited to, injuries* that result from collisions with other trampoliners or other spectators, *injuries* that result from falls, injuries that result from landing on the trampoline, pad, or platform, *and injuries* that involve objects or artificial structures properly within the intended travel of the trampoline are *that are not otherwise attributable to the operator's breach of his or her common law duties.*  [MCL 691.1736.]