*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ZUG ISLAND FUELS COMPANY, LLC,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

FOR PUBLICATION
April 14, 2022
9:00 a.m.

No. 356419
Court of Claims
LC No. 19-000102-MT

Before: BORRELLO, P.J., and MARKEY and SERVITTO, JJ.

MARKEY, J.

Plaintiff, Zug Island Fuels Company, LLC (ZIFC), appeals by right the order of the Court of Claims granting summary disposition in favor of defendant, Department of Treasury (the Department), under MCR 2.116(C)(10). This action arose out of an audit initiated by the Department with respect to taxes paid by ZIFC under the Michigan Business Tax Act (MBTA), MCL 208.1101 *et seq.* The appeal concerns the proper interpretation and application of MCL 208.1113(6)(a) in relation to ZIFC's claimed "inventory" deduction for delivery charges associated with its purchases of coal. We agree with the Court of Claims that the deduction was not available to ZIFC under the MBTA. Accordingly, we affirm.

## I. STATUTORY FRAMEWORK

To give context to the litigation between the parties, we begin with a discussion of the pertinent provisions of the MBTA. We first note that "[t]he MBTA was repealed by 2011 PA 39, and replaced with the Corporate Income Tax Act, MCL 206.601 *et seq.*, effective January 1, 2012." *Comerica, Inc v Dep't of Treasury*, 332 Mich App 155, 158 n 2; 955 NW2d 593 (2020). Even though the MBTA was "repealed in 2011 subject to certain conditions being satisfied, the MBTA still applies under certain circumstances." *Comerica, Inc*, 332 Mich App at 158 n 2 (citation omitted). In the instant case, the tax period at issue ran from June 25, 2009, to December 31, 2010. Therefore, there is no dispute that the MBTA was applicable.

The MBTA levies and imposes a business income tax, MCL 208.1201, and a modified-gross-receipts tax, MCL 208.1203, on taxpayers conducting business in Michigan. See *Total Armored Car Serv, Inc v Dep't of Treasury*, 325 Mich App 403, 407; 926 NW2d 276 (2018). The

Department's audit in this case concerned plaintiff's liability relative to the modified-gross-receipts tax. The modified-gross-receipts tax is "levied and imposed . . . upon the privilege of doing business and not upon income or property." MCL 208.1203(2). "The modified gross receipts tax is imposed on the modified gross receipts tax base, after allocation or apportionment to this state at a rate of 0.80%." MCL 208.1203(1). And "[t]he modified gross receipts tax base means a taxpayer's gross receipts . . . *less purchases from other firms* before apportionment . . . ." MCL 208.1203(3) (emphasis added). Stated otherwise, a taxpayer may claim a deduction from the taxpayer's gross receipts for "purchases from other firms" for purposes of calculating the taxpayer's modified gross receipts tax base. Relevant to the dispute, MCL 208.1113(6)(a) defines "[p]urchases from other firms" as "[i]nventory acquired during the tax year, including freight, shipping, delivery, or engineering charges included in the original contract price for that inventory." We shall refer to this deduction for "purchases from other firms" as the "inventory" deduction.

## II. BACKGROUND

In resolving this appeal, it is unnecessary for us to go into any great detail regarding the underlying facts and procedural history. As part of its business operations in Michigan, ZIFC made several coal purchases from various suppliers during the relevant tax period in 2009-2010. There is no dispute that the purchased coal itself, at the contract prices thereon, qualified for the inventory deduction under MCL 208.1203(3) and MCL 208.1113(6)(a). ZIFC also incurred freight/shipping/delivery charges[1] in connection with its purchases of coal and the delivery of the product. ZIFC took the position that delivery charges associated with the coal purchases could be included in the inventory deduction even if those charges were not included in the original contract prices for the coal purchases. Again, the deduction pertains to "[i]nventory acquired during the tax year, including freight, shipping, delivery, or engineering charges *included in the original contract price for that inventory*." MCL 208.1113(6)(a) (emphasis added). For a variety of reasons, including application of the last-antecedent rule,[2] ZIFC construed this language as solely requiring engineering charges—and not freight, shipping, and delivery charges—to be included in the original contract price for the inventory in order for the deduction to apply. In other words, ZIFC interpreted the phrase, "included in the original contract price," as modifying "engineering charges," absent any connection to the terms "freight," "shipping," and "delivery." The Department, on the other hand, took the stance that the terms "freight," "shipping," "delivery," and "engineering" describe the types of "charges" that can be deducted, with the phrase, "included in the original contract price," modifying every one of those types of charges.

---

[1] For ease of reference, when discussing charges for freight, shipping, and delivery that were incurred by ZIFC in having its purchased coal transported from supplier facilities to ZIFC, we shall simply refer to "delivery" charges.

[2] "[T]he last antecedent rule [is] a rule of statutory construction that provides that a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation." *Hardaway v Wayne Co*, 494 Mich 423, 427; 835 NW2d 336 (2013) (quotation marks and citation omitted).

For the tax period at issue, ZIFC paid taxes under the MBTA in an amount that was calculated by applying an inventory deduction covering the price of purchased coal, along with the price of delivery charges incurred in transporting and obtaining the coal from suppliers. The Department subsequently conducted an audit, concluding that the delivery charges could not be included in ZIFC's inventory deduction. The Department, therefore, adjusted ZIFC's tax liability and issued a bill to ZIFC for an additional $150,000 in MBTA taxes. ZIFC then requested an informal conference to challenge the Department's audit assessment. ZIFC raised an additional argument that delivery obligations and charges were in fact referenced in the original coal contracts; therefore, ZIFC was entitled to the full inventory deduction that it had sought even if the Department's construction of MCL 208.1113(6)(a) were legally sound. The referee did not reach that particular argument because the referee concluded that delivery charges do not have to be included in the original contract price for purchased inventory and that only engineering charges have to be so included for the inventory deduction to apply.

Subsequently, an administrator with the Department's Hearings Division issued a decision rejecting the referee's recommendation and affirming the initial assessment that disallowed the inventory deduction with respect to the delivery charges involved in transporting the coal from supplier facilities to ZIFC. ZIFC then pursued litigation in the Court of Claims, arguing in favor of its interpretation of MCL 208.1113(6)(a), along with contending that even if the Department's construction of MCL 208.1113(6)(a) were correct, ZIFC's contracts for coal purchases referenced the subject of payment for delivery charges associated with the coal. On the Department's motion for summary disposition under MCR 2.116(C)(10), the Court of Claims rejected ZIFC's arguments as a matter of law. The Court of Claims instead ruled that there was no genuine issue of material fact that the delivery charges could not be deducted because the charges had to be included in the original contract prices for the coal and because the evidence established that the delivery charges were incurred under separate contracts with various transportation entities. ZIFC appeals by right.

III. ANALYSIS

A. STANDARD OF REVIEW AND SUMMARY DISPOSITION PRINCIPLES

We review de novo a ruling by the Court of Claims on a motion for summary disposition. *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 647; 852 NW2d 865 (2014). This Court also reviews de novo issues of statutory construction. *Id.*

In *Batista v Office of Retirement Servs*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 353832); slip op at 9, this Court recited the principles applicable to analyzing a motion for summary disposition brought under MCR 2.116(C)(10):

> MCR 2.116(C)(10) provides that summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. "Affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion are required . . . when judgment is sought based on subrule (C)(10)," MCR 2.116(G)(3)(b), and such evidence, along with the pleadings, must be considered by the court when ruling on

-3-

the (C)(10) motion, MCR 2.116(G)(5). "When a motion under subrule (C)(10) is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party. A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion. [Quotation marks and citations omitted; ellipses in original.]

## B. RULES OF STATUTORY CONSTRUCTION

In *Slis v Michigan*, 332 Mich App 312, 335-336, 956 NW2d 569 (2020), this Court discussed the principles governing statutory interpretation, observing as follows:

This Court's role in construing statutory language is to discern and ascertain the intent of the Legislature, which may reasonably be inferred from the words in the statute. We must focus our analysis on the express language of the statute because it offers the most reliable evidence of legislative intent. When statutory language is clear and unambiguous, we must apply the statute as written. A court is not permitted to read anything into an unambiguous statute that is not within the manifest intent of the Legislature. Furthermore, this Court may not rewrite the plain statutory language or substitute its own policy decisions for those decisions already made by the Legislature.

Judicial construction of a statute is only permitted when statutory language is ambiguous. A statute is ambiguous when an irreconcilable conflict exists between statutory provisions or when a statute is equally susceptible to more than one meaning. When faced with two alternative reasonable interpretations of a word in a statute, we should give effect to the interpretation that more faithfully advances the legislative purpose behind the statute. [Quotation marks and citations omitted.]

"Only when ambiguity exists does the Court turn to common canons of construction for aid in construing a statute's meaning." *D'Agostini Land Co LLC v Dep't of Treasury*, 322 Mich App 545, 554-555; 912 NW2d 593 (2018).

The construction of a statute by the agency charged with executing the statute is entitled to respectful consideration. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103, 754 NW2d 259 (2008) (quotation marks and citation omitted). Thus, there must be cogent reasons for

overruling the agency's interpretation of the statute. *Id.* (quotation marks and citation omitted). "Furthermore, when the law is 'doubtful or obscure,' the agency's interpretation is an aid for discerning the Legislature's intent." *Id.* An agency's construction of a statute, however, is not binding on the courts. *Id.* And the agency's interpretation cannot conflict with the intent of the Legislature as expressed in the plain language of the statute. *Id.*

## C. DISCUSSION AND RESOLUTION

### 1. DOCUMENTARY EVIDENCE REGARDING DELIVERY PRICING AND CHARGES AND ZIFC'S COAL CONTRACTS

We take ZIFC's appellate arguments out of order by first addressing its contention that even if the delivery charges had to be included in the original contract prices for the coal, the delivery costs had indeed been included by reference in the pertinent coal contracts.[3] ZIFC maintains that the language within the four corners of the coal contracts encompassed coal delivery costs and that delivery costs were included in the price of coal, even if the coal and delivery services were separately purchased. We conclude that this argument is wholly lacking in merit.

We find that the language of MCL 208.1113(6)(a) is plain and unambiguous and must be applied as written without the need to resort to common canons of construction to aid in the interpretation. We conclude that for delivery charges on inventory to be encompassed by the inventory deduction, (1) the charges had to have been included in the same contract covering the acquisition of the inventory and (2) the price paid under that contract had to have been for the inventory itself *and* for the cost of delivering that inventory to the purchaser or acquirer.

In the context of this case, for ZIFC to succeed on its arguments, the pertinent coal contracts reflecting ZIFC's purchases of coal needed to include specific pricing that covered the cost of the coal itself and the cost of having the coal delivered to ZIFC. Simply put, the price paid by ZIFC pursuant to the contracts with coal suppliers had to have covered the delivery of the coal being purchased under the contracts. And the coal contracts presented to the trial court did not fit within that framework for purposes of MCL 208.1113(6)(a). We decline to address ZIFC's arguments to the contrary, especially considering that there is no dispute that ZIFC entered into separate contracts with third-party rail and shipping companies that specified the prices charged to ZIFC to have the coal it purchased from coal suppliers delivered to its facility. We hold that the Court of Claims did not err in ruling as a matter of law that ZIFC's delivery costs were not included in the original contract prices for the coal and that, therefore, the delivery charges could not be claimed under the MBTA's inventory deduction.

### 2. PROPER INTERPRETATION OF MCL 208.1113(6)(a)

ZIFC argues that MCL 208.1113(6)(a), when properly construed, does not require that delivery charges be included in the original contract price for the purchased inventory in order for

---

[3] We address this issue first because if, as a matter of law, the delivery charges at issue were included in the original contract prices for the coal purchased by ZIFC, there would be no need to resolve the issue regarding the proper interpretation of MCL 208.1113(6)(a).

the inventory deduction to cover those delivery charges. ZIFC contends that freight, shipping, and delivery charges are not the same as engineering charges and must be treated differently, that engineering charges are not normally incurred in purchasing inventory, that the last-antecedent rule was not properly applied by the Court of Claims, and that the comma placement, or lack thereof, in MCL 208.1113(6)(a) supports its interpretation.

Once again, ZIFC's arguments lack merit, and it is not necessary for us to delve into canons of construction to aid in interpreting MCL 208.1113(6)(a) because the statutory language is not ambiguous; rather, we conclude that the language plainly and unambiguously supports the Department's position and the ruling of the Court of Claims. For the last time, we note the language of MCL 208.1113(6)(a), which provides that the inventory deduction applies to "[i]nventory acquired during the tax year, including freight, shipping, delivery, or engineering charges included in the original contract price for that inventory." The terms "freight," "shipping," "delivery," and "engineering" are quite clearly used as separate adjectives modifying or describing the plural noun "charges"; they cannot logically stand on their own and make sense in the context of the statutory definition. And the phrase, "included in the original contract price," plainly modifies the term "charges" *and all that it entails*. Accordingly, the phrase, "included in the original contract price," applies to or modifies each and every one of the four types of charges described in MCL 208.1113(6)(a). No further construction is necessary or allowed. See *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999) ("If the language of the statute is unambiguous, the . . . statute must be enforced as written[,] [and] [n]o further judicial construction is required or permitted."). Therefore, we hold that the Court of Claims did not err in its interpretation of MCL 208.1113(6)(a).

We affirm. Having fully prevailed on appeal, the Department may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto