**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 17, 2002**

MICHAEL STANTON and JOY STANTON,

    Plaintiffs-Appellants,

v                                          No. 115909

CITY OF BATTLE CREEK, and
ALLEN MAYNARD HOWARD,

    Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

    This case calls into question whether a forklift is a "motor vehicle" within the ambit of the motor vehicle exception to governmental immunity, MCL 691.1405. We hold that it is not, and, therefore, we affirm the decision of the Court of Appeals, which affirmed the trial court's order granting summary disposition in favor of defendants.

## I. Facts And Proceedings

On April 28, 1995, plaintiff Michael Stanton[1] was working as a truck driver for Hover Trucking Company and delivered hardware to a site defendant city of Battle Creek owned. Defendant Allen M. Howard, a city employee, drove a forklift owned by the city to plaintiff's truck and loaded the hardware onto the forklift. After the hardware was removed from plaintiff's truck, Howard prepared to back up and drive away, and plaintiff lowered the truck door and stepped down. The brakes on the forklift stuck and the forklift stayed in neutral, rolled forward, and struck plaintiff. Plaintiff alleges he suffered numerous injuries as a result.

In August 1996, plaintiff sued the city, alleging negligent maintenance and operation of the forklift, and sued Mr. Howard, alleging negligent or grossly negligent maintenance and operation of the forklift. Defendants moved for summary disposition under MCR 2.116(C)(7),(8), and (10). The circuit court granted the defendants' motion for summary disposition on governmental immunity grounds, MCR 2.116(C)(7), and the Court of Appeals affirmed. 237 Mich App 366; 603 NW2d 285 (1999). When the plaintiff initially appealed to this Court, we denied leave to appeal. 461 Mich 1019 (2000).

---

[1]The claim for loss of consortium, brought by plaintiff's wife Joy Stanton, is derivative.

2

Plaintiff, thereafter, filed a motion for reconsideration, which we granted.[2]

## II. Standard of Review

We review de novo decisions on summary disposition motions. *Sewell v Southfield Pub Schs*, 456 Mich 670, 674; 576 NW2d 153 (1998).

Similarly, we review questions of statutory interpretation de novo. *In re MCI Telecommunications*, 460 Mich 396, 413; 596 NW2d 164 (1999).

## III. Discussion

### A. Liability of the City of Battle Creek

The governmental tort liability act, MCL 691.1401 *et seq.*, provides immunity from tort liability to governmental

---

[2] The order granting plaintiff's motion for reconsideration directed the parties to brief the following five issues:

(1) whether a forklift is a "motor vehicle" as that term is used in MCL 691.1405; (2) whether, in light of 1995 PA 140, *Mull v Equitable Life Assurance Society of the United States*, 444 Mich 508 (1994), affects the answer to the previous question; (3) whether, if the answer to (2) is in the affirmative, language in *Mull* not affected by 1995 PA 140 should be disavowed; (4) whether a decision by this Court to disavow such parts of *Mull* would affect the outcome in this case; and (5) whether the "vehicle exception" in MCL 691.1405 creates a cause of action against governmental agencies, or merely defines an exception to the immunity conferred by MCL 691.1407(1). [465 Mich 855 (2001).]

3

agencies[3] engaged in a governmental function.[4] MCL 691.1407(1). The act provides immunity from tort liability to governmental employees if, inter alia, the employee's conduct does not amount to gross negligence.[5] The legislative immunity granted to governmental agencies and their employees is broad. This immunity, however, is subject to five narrowly drawn statutory exceptions.[6] *Ross v Consumers Power (On*

---

[3] The municipal defendant is a governmental agency, as noted by the following statutory definitions:

(a) "Municipal corporation" means a city, village, or township or a combination or 2 or more of these when acting jointly.

(b) "Political subdivision" means a municipal corporation, county, county road commission, school district, community college district, port district, metropolitan district, or transportation authority or a combination of 2 or more of these when acting jointly; a district or authority authorized by law or formed by 1 or more political subdivisions; or an agency, department, court, board, or council of a political subdivision.

* * *

(d) "Governmental agency" means the state or a political subdivision. [MCL 691.1401.]

[4] Neither party disputes that the city was engaged in a governmental function at the time of the incident.

[5] MCL 691.1407(2).

[6] The five statutory exceptions are: the "highway exception," MCL 691.1402; the "motor vehicle exception," MCL 691.1405; the "public building exception," MCL 691.1406; the "governmental hospital exception," MCL 691.1407(4); and the "proprietary function exception," MCL 691.1413.

*Rehearing)*, 420 Mich 567, 593-595, 622; 363 NW2d 641 (1984).

Plaintiff asserts that he may recover from the city for his injuries suffered as a result of the negligent operation of the government-owned forklift under the motor vehicle exception. Thus, we must examine the language of the motor vehicle exception to determine whether a forklift is a "motor vehicle" as that term is used in the exception.

Whether the Legislature intended that the term "motor vehicle" include a forklift is an issue of statutory interpretation. The primary rule of statutory interpretation is that we are to effect the intent of the Legislature. *Wickens v Oakwood Healthcare System*, 465 Mich 53, 60; 631 NW2d 686 (2001). To achieve this task, we must first examine the statute's language. *Id.* If the language is clear and unambiguous, we assume the Legislature intended its plain meaning, and the statute is enforced as written. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001).

The motor vehicle exception does not define "motor vehicle." Further, contrary to the interpretation of the Court of Appeals, the governmental tort liability act does not refer to the Michigan Vehicle Code, MCL 257.1 *et seq.*, for the definition. Section 1405, the motor vehicle exception, provides:

Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in [the Michigan Vehicle Code], as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

The Court of Appeals erroneously assumed that the definitional phrase in § 1405 refers to the term "motor vehicle." Grammatically, the final clause of § 1405 sends the reader to the Michigan Vehicle Code only for the definition of "owner." The "last antecedent" rule of statutory construction provides that a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation. *Sun Valley Foods Co v Ward,* 460 Mich 230, 237; 596 NW2d 119 (1999). Applying this rule, the reference to §§ 257.1 to 257.923 in § 1405 defines "owner,"[7] not "motor vehicle," and nothing in the statute demands a different interpretation. *Haveman v Kent Co Rd Comm'rs*, 356 Mich 11, 18-22; 96 NW2d 153 (1959).[8]

---

[7]The parties do not dispute that defendant city was the "owner" of the forklift.

[8]This very construction was utilized in *Haveman,* in which this Court had to determine whether a "Gradall" road-maintenance machine was a "motor vehicle" within the meaning of an earlier version of what has become the GTLA's motor vehicle exception. Construing nearly identical language, this Court held that the reference clause in the prior version of

6

Accordingly, because the motor vehicle exception does not provide a definition of "motor vehicle," we are required to give the term its plain and ordinary meaning. MCL 8.3a; *People v McIntire*, 461 Mich 147, 153; 599 NW2d 102 (1999). When determining the common, ordinary meaning of a word or phrase, consulting a dictionary is appropriate. *Horace v City of Pontiac,* 456 Mich 744, 756; 575 NW2d 762 (1998).

It is possible to find varying dictionary definitions of the term "motor vehicle." For example, the *Random House Webster's College Dictionary* (2001) defines a "motor vehicle" as "an automobile, truck, bus, *or similar* motor-driven conveyance," a definition that does not include a forklift.[9] In our view, this definition appropriately reflects the

---

§ 1405 applied to only the term "owner." *Id.* at 18-22. We note that although the earlier version of the statute has been repealed and replaced by § 1405, the definitional reference has remained virtually unchanged by the Legislature since *Haveman* was decided.

[9]*Merriam-Webster's Collegiate Dictionary* (OnLine ed) and *Webster's Ninth New Collegiate Dictionary* define motor vehicle as "an automotive vehicle not operated on rails, esp: *one with rubber tires for use on highways.*" [Emphasis added.]

*Webster's New World Dictionary* (2d College ed) defines motor vehicle as "a vehicle on wheels having its own motor and not running on rails or tracks, *for use on streets or highways, esp. an automobile, truck, or bus.*" [Emphasis added.]

commonly understood meaning of the term.[10] *The American Heritage Dictionary* (2d College ed), on the other hand, defines "motor vehicle" as "self-propelled, wheeled conveyance that does not run on rails," a definition, which would arguably include a forklift. Given these divergent definitions, we must choose one that most closely effectuates the Legislature's intent. Fortunately, our jurisprudence under the governmental tort liability act provides an answer regarding which definition should be selected. As previously noted, it is a basic principal of our state's jurisprudence that the immunity conferred upon governmental agencies and subdivisions is to be construed broadly and that the statutory exceptions are to be narrowly construed. *Nawrocki v Macomb Co Rd Comm,* 463 Mich 143, 158; 615 NW2d 702 (2000). Thus, this Court must apply a narrow definition to the undefined term "motor vehicle."

The definition of a "motor vehicle" as "an automobile, truck, bus, or similar motor-driven conveyance" is the

---

[10]This definition is also consistent with other analogous legislative provisions concerning "motor vehicles." For example, a forklift is expressly excluded from the statutory definition of "motor vehicle" for purposes of the civil liability act. MCL 257.33. Nor does the definition of motor vehicle in our no-fault act—a "vehicle . . . operated or designed for operation upon a public highway"—encompass construction equipment such as a forklift. MCL 500.3101(2)(e).

8

narrower of the two common dictionary definitions. Therefore, we apply it to the present case. A forklift–which is a piece of industrial construction *equipment*–is not similar to an automobile, truck, or bus. Thus, the motor vehicle exception should not be construed to remove the broad veil of governmental immunity for the negligent operation of a forklift.

## B. Liability of the Employee

Plaintiff also brought claims asserting that the city's employee, Mr. Howard, negligently maintained and operated the forklift.[11]

Mr. Howard is entitled to immunity as a city employee from the negligent maintenance and operation claims if § 1407(2) is satisfied. Section 1407(2) provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a

---

[11]Even if we concluded § 1405 applied to this case, because § 1405 only applies to the negligent *operation* of motor vehicles, plaintiff's claim for negligent *maintenance* against the city is barred by the general immunity statute, § 1407(1).

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.

governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

There is no dispute that subsections (a) and (b) are satisfied, thus, the question is whether Mr. Howard was grossly negligent in maintaining and operating the forklift under subsection (c). Plaintiff asserts that Mr. Howard was grossly negligent in failing to check the brakes after knowing the brakes were faulty and in driving the forklift without a valid license to operate the lift. We reject plaintiff's arguments. As the Court of Appeals noted, once Mr. Howard noticed the problematic brakes, he notified his supervisor. Once Mr. Howard retrieved the forklift, he thought the brakes had been fixed, as there was no indication otherwise. Moreover, once the forklift began to roll forward at the time

10

of the accident, Mr. Howard used his toe to unstick the brakes and the forklift retreated backward, as intended. Even though Mr. Howard did not have a valid license to operate the lift at the time plaintiff was injured, the above evidence shows that Mr. Howard was not otherwise unqualified to operate the forklift. Additionally, Mr. Howard maintained the forklift as best he could by reporting the problem, taking the forklift for repairs, and retrieving and operating the lift after he thought repairs were completed, since there was no red flag on the forklift, which would have indicated a faulty lift. We agree with the Court of Appeals that no reasonable mind could conclude that this amounts to reckless conduct showing Mr. Howard's substantial lack of concern of whether an injury would occur when Mr. Howard used the forklift. Thus, we hold that summary disposition for defendants on the negligent maintenance and operation claims was proper.

## IV. Conclusion

For these reasons, we hold that a forklift is not a "motor vehicle" for purposes of the motor vehicle exception to governmental immunity; therefore, the exception does not apply to plaintiff's case and the city is immune from liability. We additionally hold that summary disposition was properly granted to the city's employee because no reasonable juror could conclude that he maintained or operated the forklift in

a grossly negligent manner.  Accordingly, for the reasons stated, we affirm the decision of the Court of Appeals.

CORRIGAN, C.J., and WEAVER, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CAVANAGH, J.

S T A T E   O F   M I C H I G A N

SUPREME COURT


MICHAEL STANTON and JOY STANTON,

    Plaintiffs-Appellants,

v                                       No. 115909

CITY OF BATTLE CREEK and
ALLEN MAYNARD HOWARD,

    Defendants-Appellees.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I disagree with the majority's construction of the term "motor vehicle" and would hold that a forklift truck falls within the motor vehicle exception to governmental immunity, MCL 650.1405. I would reverse the Court of Appeals conclusion to the contrary and therefore must dissent. In all other respects, I concur with the majority opinion.

Two basic maxims of statutory construction collide in this case. The words in a statute must be given their ordinary meaning according to common usage. *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828

(1997); *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135-136; 545 NW2d 642 (1996). At the same time, certain statutes, such as the exception to governmental immunity, must be narrowly construed. See *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158; 615 NW2d 702 (2000). Neither rule predominates, and this Court has not established a methodology for applying both to the same statute.

When the two principles of statutory construction are properly applied, neither should be rendered nugatory. Thus, although care must be taken not to apply an expansive meaning to "motor vehicle," we must ensure that the term is not given too narrow a meaning, thereby departing from its commonly understood meaning. I believe that happened in this case. By narrowly construing MCL 691.1405, the majority improperly departs from the ordinary meaning of the term "motor vehicle."

It considers the dictionary definition of "motor vehicle" and recognizes that dictionaries vary in the definition. It settles on Webster's definition: "an automobile, truck, bus, or similar motor-driven conveyance." It reads this definition as excluding a forklift truck. However, if one examines the definition of "vehicle," one finds that the notion of a "motor vehicle" is more broad. Webster's defines "vehicle" as "any means in or by which someone or something is carried or conveyed; means of conveyance or transport: a motor vehicle."

2

I believe that this suggests that a forklift truck is commonly understood to be a motor vehicle.

Moreover, the majority begs the question what "motor-driven conveyance" is "similar" to an automobile, truck or bus, if not a forklift. One may read together Webster's definition with *The American Heritage Dictionary* definition, rejected as overly broad by the majority. Then, a "motor vehicle" is "any self-propelled, wheeled conveyance that does not run on rails." It appears that the factor that makes nonautomobiles "similar" to automobiles, cars, and trucks, is that they have wheels and are designed to transport something on a road. Thus, I believe that the commonly understood meaning of the term "motor vehicle" is any self-propelled device that is used to transport someone or something on a road.

This Court came to the same conclusion when it considered the term "motor vehicle" in the context of the civil liability act.[1] At that time, the Court determined that the term included a front-end loader, a machine strikingly similar to a forklift. See *Mull v Equitable Life Assur Soc*, 444 Mich 508, 514-519; 510 NW2d 184 (1994). Most significantly, this Court recognized that the term "motor vehicle" has a broader meaning than "automobile," stating that "[i]t is a generic

---

[1]MCL 257.401 *et seq.*

3

term for all classes of self-propelled vehicles not operated on stationary rails or tracks." *Id.* at 515, citing *Jernigan v Hanover Fire Ins Co of New York*, 235 NC 334, 335-336; 69 SE2d 847 (1952). I believe that this Court was correct to recognize a difference in meaning between "motor vehicle" and "automobile," a distinction that is ignored in the majority opinion.

The majority departs from the commonly understood meaning of "motor vehicle" when it applies to MCL 691.1405 a narrow definition of the term in an attempt to narrowly construe the statute. Under the majority's construction, MCL 650.1405 becomes the automobile exception, rather than the motor vehicle exception. The most plain meaning of the term "motor vehicle" includes any self-propelled vehicle used to transport materials on a road and is not limited to automobiles. Because a forklift truck is indisputably a self-propelled vehicle driven on a road to transport materials, I would conclude that it is a motor vehicle within the meaning of MCL 650.1405. I believe that plaintiff is entitled to bring a cause of action for the negligent operation of a forklift truck and that it should survive a governmental immunity challenge.

4